In the Matter of the Claim of DOROTHY LIVERMORE, Respondent, v. PLANET CORPORATION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 2, 1960.

*Frank C. Roberts* and *Emil L. Cohen* for appellants.

*A. Thorne Hills* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*John J. Reilly* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

REYNOLDS, J. The question presented by this appeal is whether there is evidence to sustain the finding of the Workmen's Compensation Board that the claimant had established a common-law marriage between herself and the deceased employee. The claimant had been previously married but the marriage was annulled in June, 1940. In the first part of September, 1940 the claimant and decedent left New York to go to Kentucky to get married. The claimant's annulment did not become final until later in September so they returned to New York without being married although they told their family and friends that they were married. After a day or so they went to Michigan to get married and it appears the decedent also had a job in Michigan. The claimant lived there with him as man and wife for two weeks when, because of the crowded conditions and to make room for other workers, she returned to New York. While in Michigan the decedent introduced the claimant as his wife and they were known as husband and wife. The claimant testified that they intended to get married in Michigan but that after getting there the decedent said that rather than being married they would '' Go through the common law.'' When the claimant returned from Michigan in October she discovered that she was pregnant and she stated that she and the decedent did not go through a ceremony thereafter because her family already thought she was married and she did not want them to know. It appears that the decedent came to New York on weekends until January, 1941 when the claimant again went to Michigan to live with him and they stayed there until about Easter of that year. The claimant and decedent then returned to New York where they lived as husband and wife until the decedent's death on June 12, 1956. They had a joint bank account, filed joint tax returns, the decedent told his son by a previous marriage that the claimant was his wife and he named the claimant as beneficiary of a life insurance policy. The decedent was named as father on the birth certificate of the child that was born to the claimant and that the child was his is not questioned.

A common-law marriage in Michigan and in New York, prior to its respective abolitions in 1956 and 1933, required proof of a present agreement to take each other as husband and wife and to continue to cohabit together thereafter in that relationship. (*Walsh* v. *Ferguson*, 249 Mich. 539; *Gall* v. *Gall*, 114 N. Y. 109; *Matter of Haffner*, 254 N. Y. 238.)

The Referee awarded death benefits to the claimant finding that a common-law marriage was entered into in Michigan in September of 1940 (an award was also made to the child but that is not involved here). The board affirmed finding that while a meretricious relationship originally existed, a new agreement was entered into in Michigan and that a common-law marriage was shown. The board also affirmed the Referee's holding that the production of expert testimony on the law of Michigan was unnecessary.

The appellants contend that a common-law marriage was not made out in that no agreement was shown to have taken place between the parties in Michigan and a relationship meretricious in its inception is presumed to remain so and further that it was error to refuse to permit them to produce expert testimony as to the law of Michigan. It would appear that the evidence presented to the board was sufficient to support the finding of a common-law marriage. It is admitted that at the time in question Michigan recognized common-law marriages. The relationship of the parties appears meretricious in its inception at the time of their trip to Kentucky since not only did Kentucky not recognize common-law marriages at that time but further the claimant's annulment from her former husband was not final. However, the board could find that the parties fully intended to be formally married in Kentucky, that an illicit relationship was not intended, and that it was only because the annulment was not final that they did not marry. There is ample evidence here indicating the parties intended to live in lawful wedlock as man and wife after the annulment was final and it is clear that they did live as such until the decedent's death. The appellants assert that no new agreement was entered into in Michigan, which was necessary to make out a common-law marriage and to overcome the presumption of a continuing illicit relationship. It would seem, however, that the board could find such from the claimant's testimony indicating the parties' intent to marry in Michigan and that the decedent decided that rather than a formal marriage they would have a common-law marriage. The latter may well have been conceived by the claimant to meet the necessities of her compensation claim but that, of course, was a question of credibility for the board.

The appellants cite several Michigan cases contending that they indicate that under the circumstances here a common-law marriage was not made out under Michigan law. They place emphasis on *Clore* v. *Swift Co.* (301 Mich. 732) which was a compensation proceeding in which it was held that a common-law marriage did not exist. However, the court there stated

that a question of fact had been presented to the compensation board and though others might conclude differently the board's decision was final. It was stated that a question of fact is usually involved in such cases and that the test is did the parties presently agree to take each other as husband and wife and thereafter live together in that relationship. Certainly there was sufficient evidence to present a question of fact under that test to the board here. Further in *Matter of Kachula* (324 Mich. 725, 729) cited by the appellants, it was stated: "The continuing constancy and maintenance of the honestly-intended relationship as husband and wife during a period of 7 years is evidence of the existence of a present agreement." Here the continuing relationship for 16 years is evidence of a present agreement and in view of the claimant's testimony that agreement could be found to have taken place in Michigan.

Further the recent case of *Matter of Dellaca v. Hughes Constr. Co.* (11 A D 2d 828) gives added support to the board's decision here. There the parties began living together in New York in 1929 while the claimant had a living husband. Shortly after the husband died in 1937 the parties moved to New Jersey for about a year and common-law marriages then were recognized in New Jersey. They thereafter returned to New York. It was not expressly shown that the parties entered into any new agreement when they moved to New Jersey, but this court upheld the finding of a common-law marriage and it cited *Matter of Haffner* (254 N. Y. 238, 243) where it was said, "The conduct of the parties evidenced their intent to live in lawful wedlock after the impediments to their marriage were removed." (See, also, *Matter of Denny v. Knickerbocker Constr. Corp.*, 6 A D 2d 910.)

Finally the appellants' claim of error in the refusal to permit them to produce an expert witness as to the law of Michigan would appear to be without merit. The appellants as well as the claimant were permitted to and did submit briefs and reply briefs. It would appear that the appellants could fully have presented any law of Michigan which they desired to in such a manner and that it was not prejudicial error to refuse to permit them to present expert testimony on this question if the Referee felt that it was unnecessary.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.