LORRELL LIVINGSTON et ux., appellees, v. VERYL MORAREND et al., appellants.

No. 52455.

(Reported in 149 N.W.2d 850)

April 4, 1967.

Hart & Hart, of Elkader, for appellants.

Alfred E. Hughes, of Dubuque, and Hunt & Degnan, of Guttenberg, for appellees.

SNELL, J.—Defendants appeal from judgment following a jury verdict for plaintiff Lorrell Livingston in a farm accident case. The jury allowed nothing to plaintiff Lela Livingston on her claim for loss of consortium. She has not appealed. Ray Barnhart, a fellow employee of plaintiff originally named as a defendant, was dropped as a defendant when plaintiff's petition was recast. Basically, the issue before us is the sufficiency of the evidence to generate a jury question.

Defendant, Veryl Morarend, is a farm owner and operator. Plaintiff, Lorrell Livingston, is a farmer and neighbor.

Defendants, Robert Schaub and Burdette Schenke, are farmers and the owners of silo filling equipment with which they do custom work. At the time of plaintiff's accident the parties were engaged in filling a silo on the Morarend farm with chopped hay. Defendants Schaub and Schenke furnished the machinery, equipment and the labor of two men. Plaintiff was working on an exchange of work basis with defendant Morarend.

The machine involved in plaintiff's accident was a long hopper blower used in filling the silo.

The hopper, with a flanged top, was about nine feet long. A wagon, when backed into position, could unload directly into the hopper. A chain type conveyor at the bottom of the hopper moved the chopped fodder to the blower that blew the fodder up and into the silo.

Hinges and springs at the end of the hopper next to the blower permit the hopper to be raised and lowered. When raised it is in a vertical position against the silo. When lowered it is parallel to and rests on the ground.

The hopper is raised out of the way to facilitate the movement of loaded wagons from one side to the other to be unloaded. When the way is clear the hopper is lowered and the wagon backed into position so that the contents can be moved (conveyed or forked) directly into the hopper. The machinery is then started and the fodder is unloaded, conveyed and blown into the silo.

The operation here involved required men in the field to cut and chop the hay, haulers to haul the fodder from the field to the silo and at least two men to run the machinery and fork the fodder into the hopper. There was mechanical equipment to unload the wagons but some help by a man with a fork or rake was needed.

Extending from the outer end of the hopper are two bars with a pin-type hitch. It is a permanent installation to aid in moving the equipment from one location to another. There was evidence that this hitch had originally been equipped with a jack stand to level the hopper and hold it above the ground. Defendants Schenke and Schaub had purchased the blower hopper as used equipment and it had never been equipped with a jack stand during their ownership. Without the jack stand the hopper rested on the ground. Whether it was level would depend on the contour of the ground.

On each side of the hopper at the blower end was a spring three feet long and about three inches in diameter. The tension provides help in raising the hopper. The springs were adjustable but were rusted and had not been adjusted. It took a lift of 20 to 25 pounds to start the hopper up. To raise the hopper one man at times but usually two, one on each side, lifted from the sides near the far end.

There is a conflict in the testimony as to who was doing what when plaintiff was injured. As the hopper was being raised he was struck by the hitch extending from the end of hopper.

At first plaintiff did not realize that he had suffered any serious injury. Trouble from his injury became apparent in a few days. Medical treatment, hospitalization, cystoscopic examination and surgery for draining of an abscess and repair of a damaged urethra followed. Some permanent injury remains.

Plaintiff sued for his injuries and damage and over defendants' vigorous and timely objections the case was submitted to the jury.

Defendants denied that plaintiff was injured by any proximate negligence on their part and as affirmative defenses de-

fendant Morarend pleaded the "Fellow Servant Rule" and "assumption of risk." The jury returned a verdict for plaintiff in the sum of $8500.

As against defendant Morarend the court submitted three specifications of negligence alleged by plaintiff: failure to provide plaintiff with a safe place to work, failure to warn of danger, and failure to instruct as to safe methods of operation of the blower.

As against defendants Schenke and Schaub the court submitted two specifications of negligence alleged by plaintiff: failure to warn of alleged dangers in connection with operation of the equipment, including any danger which might result from allowing silage or debris to accumulate around the hopper, and failure to provide a competent person to direct the operation of the equipment.

The jury was thoroughly and accurately instructed on all issues. There is no present challenge to the accuracy of the instructions.

None of the defendants was at the silo when plaintiff was hurt. Morarend and Schenke were in the field mowing and chopping hay. Schaub was not at the farm. He had furnished a replacement for the day. Plaintiff and a fellow employee had been raking off the hay into the hopper. Another employee was at the silo inserting the doors as the silo was filled.

There was a conflict in the evidence as to plaintiff's experience and familiarity with the operation of the equipment. There was testimony also disputed that there was an accumulation of hay and debris around the end of the hopper covering the protruding hitch.

Plaintiff said he had not noticed and was not aware of the protruding hitch. He testified: "When I was actually struck by the hitch I was looking toward the silo, to help lift the hopper. I didn't go around looking right at the ground, was looking where I was going." Just where plaintiff was standing at the time and who was lifting the hopper is not entirely clear. A fellow employee said he had his hands on the side of the hopper but did no actual lifting. He said plaintiff was lifting from the end and was caught by the hitch.

There was testimony that none of the defendants had given any instructions as to operation of the equipment, where to stand in lifting the hopper or any warning as to the danger incident thereto. There was evidence from which a jury might conclude that the absence of a jack stand that would keep the hopper and hitch off the ground and in plain sight created an extra hazard.

Plaintiff's evidence was thin but it cannot be disputed that there was inherent danger in the operation of the equipment. The jury could and obviously did conclude that defendants failed in proper precautions for the safety of the workers. To resolve such questions is what juries are for. It is not for us to substitute our judgment for that of the jury.

I. While the problem here is basically factual, i.e., the sufficiency of the evidence to generate a jury question, well established rules must be kept in mind.

We view the evidence in the light most favorable to the party against whom the motion is made. Rule 344(f)(2), Rules of Civil Procedure, as amended.

Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Rule 344(f)(10), Rules of Civil Procedure.

Plaintiff's case was based on allegations of negligence. To prevail it was his burden to establish negligence and proximate cause by a preponderance of the evidence. Rule 344(f)(5), Rules of Civil Procedure.

Defendants do not argue any question of contributory negligence. Plaintiff's actions were, of course, involved in the question of proximate cause. There is no claim that the jury was improperly instructed relative thereto.

The burden is on plaintiff to show the cause of the accident and it cannot be left to speculation and conjecture. Westenburg v. Johnson, 221 Iowa 134, 142, 264 N.W. 18, and citations.

This rule, however, must be considered together with the rule that provides that courts must view the evidence in the light most favorable to the one against whom the attack is made.

Pinta v. Joyce, 231 Iowa 343, 1 N.W.2d 100; rule 344(f)(2), Rules of Civil Procedure, as amended.

The recent change in the wording of rule 344(f)(2) does not change the situation here.

Plaintiff's case is not controlled by nor are defendants entitled to prevail because of what we said in Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312. There plaintiff attempted to hold defendant farm operator responsible for the basic design of a silo unloader. We have no such issue here. In Wagner v. Larson, supra, plaintiff was thoroughly familiar with the machine. Plaintiff's specifications of negligence were not supported by the record. In the case at bar there was evidence not appearing in Wagner v. Larson, supra.

II. In recent years farm accident cases have come before us with increasing frequency. The problems incident thereto have been thoroughly reviewed.

In Frederick v. Goff, 251 Iowa 290, 100 N.W.2d 624, plaintiff, a farm employee, was injured while filling a silo. He slipped and fell into the hopper auger and fan. He had worked with the equipment for a week. There were some worn parts that caused them to become disconnected. This happened frequently and plaintiff would put them together. Plaintiff and defendant were fully aware of the faulty equipment so the question of warning was not involved. While attempting to engage the worn parts plaintiff was injured. We said:

"It is a settled rule that an employer must use reasonable care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools with which to work." (Citations) (Loc. cit. 295)

On assumption of risk, we said:

"* * * we think assumption of risk does not appear as a matter of law and it was proper to submit this issue to the jury. It is an affirmative defense and the burden to prove it rested upon defendant. [Citations] It is seldom a party who has the burden on such an issue establishes it as a matter of law. * * *

"If defendant was negligent in the respect alleged plaintiff did not assume the risk of injury therefrom by continuing in the

work unless in the usual and ordinary course of his employment it was his duty to repair the equipment or remedy the defect therein, and even if such were his duty, he assumed no risk therefrom unless the danger from its use was imminent so a reasonably prudent person would not continue in the work. * * *." (Loc. cit. 296, 297)

On proximate cause we quoted with approval: "Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care [citations]." And said, "In considering the issue of proximate cause we have frequently cited the Swaim case with approval." (Loc. cit. 298)

We held, loc. cit. 299, that reasonable minds could conclude that defendant's furnishing of defective equipment was a substantial factor in bringing about plaintiff's injury.

That case dealt with faulty equipment with the danger inherent therein known to plaintiff. In the case at bar we have a claim of failure to warn as to danger, instruct as to procedure or supervise the operation. The evidence here from which plaintiff's claim must be viewed is just as strong as in Frederick and what was there said is appropriate here.

In Calkins v. Sandven, 256 Iowa 682, 129 N.W.2d 1, plaintiff, a farm employee, tripped and fell. What he tripped over did not appear. As he fell his arm was caught in an opening at the rear of a wagon and injured by the moving bars or flights normally used to move the contents of the wagon.

Plaintiff was experienced in farm work. He had worked for defendant about four months but had previously farmed about six years. He had seen the wagon in which he was hurt but was not familiar with the details of its operation. Plaintiff was less familiar with the machine than was his employer. His action for damages was against his employer and the manufacturer of the wagon.

We repeated the well established rule that an employer must use reasonable care to provide a reasonably safe place for his employees to work and reasonably safe machinery with which

to work. Loc. cit. 694 of 256 Iowa. We said, loc. cit. 695, that the duty of the employer was very similar to the duty of the manufacturer of the wagon.

Citing Erickson v. Erickson, 250 Iowa 491, 498, 94 N.W.2d 728, 732, we noted that the machinery was considered part of the place to work. We said: "In any event we think a jury question was presented here as to whether Sandven was negligent in failing to provide plaintiff a safe instrument with which to work and failing to warn him of the danger of using the Grain-o-vator." (Citations) Loc. cit. 696 of 256 Iowa.

We quoted from 35 Am. Jur., Master and Servant, section 191, as follows: " '* * * the general tendency is to hold the employer negligent in failing to guard dangerous appliances. * * * Of course, if it can be shown that an injured employee was not informed of or did not appreciate the danger of the unguarded appliance, it is not to be supposed that a recovery will be denied by any court.' " Loc. cit. 696 of 256 Iowa.

III. Defendants argue that they would not be liable for negligence of plaintiff's fellow servant. There is neither a present claim nor evidence in the record to support a charge of negligence against the fellow servant. The fact that he was originally named as a defendant and then dropped is of no significance. Contradictions, if any, in the testimony were for the jury to resolve.

IV. Plaintiff called as a witness a district representative for Allis-Chalmers, the manufacturer of the equipment. He described the various types of machines and hitches and how they worked. He told the purpose of a tongue jack (jack stand). He had not seen the particular machine involved and testified from photographs. He said the hitch mechanism did not appear the same as when the machine was delivered by the factory to the dealer. He did not testify as to any increased danger. He made no comparison with other machines as to safety features. He expressed no opinion as to the cause of the accident. His testimony was explanatory of the mechanical equipment about which there was no dispute.

We find no error in the admission of his testimony.

V. Defendants requested the submission of four special interrogatories. The record does not disclose any ruling on the request. The special interrogatories were not given.

While the record before us is silent we assume the trial court followed the provisions of rule 196, Rules of Civil Procedure, in submitting the instructions in their final form to counsel and granting reasonable time to make objections. Rule 196 provides:

"* * * Within such time, all objections to giving or *failing to give any instruction must* be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. *No other grounds or objections shall be asserted thereafter, or considered on appeal.* But if the court thereafter revises or adds to the instructions, similar specific objection to the revision or addition may be made in the motion for new trial, and if not so made shall be deemed waived. *All instructions and objections, except as above provided, shall be part of the record."* (Italics ours.)

No objections or exceptions to the instructions as given appear in the record before us.

Whether any alleged error in the failure to submit the requested interrogatories is properly before us has not been argued. However, we call to the attention of the trial bar the plain provisions of the rule. Unless objections to the giving or failing to give any instruction are properly and timely made they shall not be considered on appeal.

Counsel have argued whether there was error in failing to submit the special interrogatories and as a matter of grace we have considered the issue.

The court's instructions required a finding on the questions necessary to support the verdict. In Dezsi v. Mutual Benefit Health & Accident Association, 255 Iowa 1027, 1037, 125 N.W.2d 219, 225, we said:

"To the extent that the requests sought information germane to the issues the matters were covered by specific instructions limiting plaintiff's right to recover. * * *

"Rule 206, R. C. P., requires the submission of only ultimate facts, not evidential ones, the answer to which would be decisive

of the case or some claim involved therein. Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1196, 91 N.W.2d 380.

"Where the court's instructions require the jury to determine the question contained in a special interrogatory, refusal of the request is not regarded as prejudicial error. Dohse v. Market Mens Mutual Insurance Co., 253 Iowa 1186, 1193, 115 N.W.2d 844."

In Ipsen v. Ruess, 241 Iowa 730, 737, 41 N.W.2d 658, we noted that a large discretion is lodged in the trial court in the matter of submitting questions to the jury.

In the case at bar we do not find such an abuse of discretion or prejudicial error in not submitting the interrogatories as to require reversal.

VI. We have considered the whole record and the alleged errors. We conclude that there was evidence for submission to the jury and no reversible error.

The case is—Affirmed.

GARFIELD, C. J., and LARSON, MOORE and RAWLINGS, JJ., concur.

STUART and MASON, JJ., dissent.

BECKER, J., takes no part.

THORNTON, J., not sitting.