**John F. BERGHAMMER and Lillian J. Berghammer, Appellees-Cross-Appellants,**

v.

**Bernard Andrew SMITH d/b/a Smith Trucking Company, Appellant-Cross-Appellee.**

**ADMIRAL–MERCHANTS MOTOR FREIGHT COMPANY, Appellee-Cross-Appellant,**

v.

**Bernard Andrew SMITH d/b/a Smith Trucking Company, Appellant-Cross-Appellee.**

**No. 54228.**

Supreme Court of Iowa.

March 11, 1971.

Rehearing Denied April 5, 1971.

Nolan, Lucas & Nolan, Iowa City, for appellant-cross-appellee.

Nelson & Fassler, Cedar Rapids, for appellees-cross-appellants.

LeGRAND, Justice.

This appeal arises out of an automobile accident which occurred on September 27, 1966. The plaintiff, John F. Berghammer, was driving a truck owned by Admiral-Merchants Motor Freight Company when he was involved in a head-on collision with a truck owned by the defendant, Bernard Andrew Smith d/b/a Smith Trucking Company, which was then being driven by

Smith's employee, Willis G. Bible, who was fatally injured in the accident.

Trial resulted in jury verdicts in favor of John F. Berghammer for personal injuries in the amount of $113,777.61; Lillian J. Berghammer for loss of consortium in the amount of $8000.00; and Admiral-Merchants Motor Freight Company for property damage in the amount of $38,920.89.

The issues raised on appeal as to all three judgments are identical except for the claim that Lillian J. Berghammer was not entitled to maintain her action for loss of consortium because Minnesota, where she and her husband reside, did not then recognize such a claim. Defendant argues Minnesota law determines her right to recover here.

I. We discuss first a procedural matter. It arises on plaintiff's motion to dismiss this appeal, which was ordered submitted with the case.

The jury returned sealed verdicts on November 25, 1969. The following morning the trial court made a calendar entry noting the verdicts and at the same time entered the following:

"Defendant is given until December 22, 1969 to file motions or pleadings in accord with the Iowa Rules of Civil Procedure. Clerk to notify counsel."

Defendant filed a motion for judgment notwithstanding the verdict under rule 243, and motion for new trial under rule 244, Rules of Civil Procedure. On December 30, 1969, the court ruled adversely to defendant on both motions.

Defendant then filed notice of appeal. Plaintiff asks us to dismiss the appeal because the calendar entry of November 26, 1969, extending the time for filing motions was entered ex parte in violation of rule 247, R.C.P. Plaintiff filed a motion in district court to set aside this order and to strike the motions filed under rules 243 and 244, R.C.P. This motion was overruled.

The matter is crucial to defendant's right to appeal. If the order extending time was irregular and should be set aside, then the notice of appeal was not filed as provided in rule 335, R.C.P.

Rule 247 includes the following:

"Motions under rules 243 and 244 * * * must be filed within ten days after the verdict, report or decision is filed, or the jury is discharged, as the case may be, unless the court for good cause shown and not ex parte, grants additional time not to exceed 30 days."

Rule 335 provides in part:

"(a) Appeals to the Supreme Court must be taken within, and not after, 30 days from the entry of the order, judgment or decree, unless a motion for new trial or judgment notwithstanding the verdict is filed as provided in rule 247, and then within 30 days after the entry of the ruling on such motion. * * * "

A similar complaint was considered in Dunham v. Des Moines Railway Company, 240 Iowa 421, 429, 35 N.W.2d 578, 583. There the trial court had entered an ex parte order extending the time within which to file motion for new trial. We said, "The extension was ex parte and thus in violation of Rule 247, supra. However irregular such an order may be, it was not jurisdictional as at the time the same was made, the court had full jurisdiction over both the parties and the subject matter. No doubt, upon timely objections, such order might be set aside."

Plaintiff, who did make timely objection in this case, relies principally on the provisions of rule 247 and our decision in Dunham as authority for dismissal of the pending appeal.

Dunham also holds the requirements of rule 247 may be waived.

We believe there is evidence of waiver here, too. The dispute arises because of an apparent misunderstanding between counsel.

Defendant was represented by Nolan, Lucas and Nolan. At the time plaintiff first claimed a violation of rule 247, affidavits were filed by both D. C. Nolan and John T. Nolan setting out their recollection of events leading up to this dispute. They both state sealed verdicts were agreed on when the case was given to the jury and the matter of extending the time for filing motions was then discussed. They say an agreement was then reached that the losing party—at that time unknown—should have additional time within which to file motions under rules 243 and 244.

These affidavits were not controverted or refuted in any way. Plaintiff argues vehemently that he was not required to file any counter-affidavits. Perhaps not, but the failure to do so is hardly helpful to us in resolving a factual dispute between counsel.

■■ If we accept the affidavits, then there was no ex parte order because of the agreement of counsel. If we reject them, then the rule was violated, the extension should be set aside, and the appeal dismissed because notice of appeal was not served within 30 days from the date of the verdict as required by rule 335.

When reputable and respected attorneys of this court file sworn statements as to matters of which they have personal knowledge, and when equally reputable and respected counsel fails to deny the statements made, although having equal knowl-. edge of the circumstances under which the events occurred, we feel justified in concluding the sworn statements state the substantial truth. Of interest on this point see Tice v. Wilmington Chemical Corp., 259 Iowa 27, 34, 141 N.W.2d 616, 621. We hold plaintiff's motion to dismiss the appeal should be overruled.

This also disposes of plaintiff's cross-appeal which raises the same issue for our consideration.

II. The right of Lillian J. Berghammer to maintain her action for loss of consortium was first raised by defendant's motion under rule 105, Rules of Civil Procedure. The motion asked the trial court to hold that the law of Minnesota, the state of the Berghammer marital domicile, determines her right of recovery.

At the time of the accident Minnesota did not recognize a wife's cause of action for loss of consortium resulting from negligent injuries to her husband. Eschenbach v. Benjamin, 195 Minn. 378, 263 N. W. 154, 157. Iowa did. Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480. Minnesota now also allows such a recovery. Thill v. Modern Erecting Co., 284 Minn. 508, 170 N.W.2d 865, decided September 19, 1969.

The trial court denied defendant's application under rule 105 and held Mrs. Berghammer's right to recover was to be determined by Iowa law. This issue was raised again later when defendant unsuccessfully asked that the consortium claim be withdrawn from the jury.

The doctrine relied on by defendant permits a court to apply to any issue in litigation the law of the state which has the most significant relationship with the parties and the principal interest in the issue, instead of resorting routinely to the law of the place where the accident occurred—lex loci delicti. We have recognized and adopted this principle in several cases, although never under the circumstances existing here. Fabricius v. Horgen, 257 Iowa 268, 277, 132 N.W.2d 410, 415–416; Flogel v. Flogel, 257 Iowa 547, 549, 133 N.W.2d 907, 908–910; and Fuerste v. Bemis, (Iowa), 156 N.W.2d 831, 834.

■ Before discussing this assignment, we consider plaintiff's assertion we should not review it at all because no proof was offered to support the contention Minnesota law is different from ours. It is true, of course, we do not judicially notice the law of other states. The one who relies on foreign law must prove it. In re Estate of Drumheller, 252 Iowa 1378, 1382, 1385, 110 N.W.2d 833, 835. As already mentioned, the question was raised

by application under rule 105, R.C.P. A hearing was held at which plaintiff appeared and successfully resisted defendant's application. There is no record of these proceedings, but the trial court's order included a specific finding that Minnesota did not allow such recovery while Iowa did. In the absence of evidence to the contrary, we assume this finding was supported by proper proof of the foreign law. We hold the matter is rightly before us on this appeal.

Consortium has been defined as the "conjugal fellowship of husband and wife; and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation". Acuff v. Schmit, 248 Iowa 272, 274, 78 N.W.2d 480, 481.

The claim for loss of such "conjugal fellowship" here raises an unusual conflicts of law problem. Ordinarily such conflict is between the law of the state where the accident occurred and that of the state where the suit is tried—the lex loci delicti and the lex fori. However, this suit is by a Minnesota plaintiff against an Illinois defendant in an Iowa court for damages arising out of an Iowa accident. Iowa law, then, is *both* the lex loci and lex fori. We are asked to apply the law of a different state—Minnesota—because it is there the Berghammers maintained their domicile and because it has the most significant relationships with them and the particular issue involved.

Prior to 1965 we would have applied our own law to Mrs. Berghammer's claim as the law of the place where the accident occurred. See Fuerste v. Bemis, (Iowa), 156 N.W.2d 831, 832.

However, first in Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410, and again in Flogel v. Flogel, 257 Iowa 547, 133 N.W.2d 907, we gave clear indication of our intention to join the growing list of states scuttling the old lex loci delicti rule. Then in the Fuerste case we unequivocally espoused the rule of significant relationship, saying at page 833 of 156 N.W.2d, "We

see no reason why the rule [of most significant relationship] should not be used in determining the substantive law to be applied to *each issue* in litigation involving a torts-conflicts question." (Emphasis added.)

In Fuerste we discuss the reasons for our departure from the inflexible lex loci rule and cite many of the authorities—both case and treatise—upon which we relied. We need not repeat them here. This conflict-of-laws problem has preoccupied scholars in recent years and has been the subject of countless law review articles. We mention only a few to supplement those set out there: 13 Stanford Law Review 719; 28 Law and Contemporary Problems (Duke University) 673; 15 U.C. L.A. Law Review 551 (a series of comments on Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727.)

We must decide two questions to dispose of this issue: (1) Is Minnesota the state of most significant relationship; and (2) if so, which Minnesota rule should be applied under the particular facts of this case, the one in effect at the time of this accident (which denies recovery) or the one recently adopted in the Thill case (which permits it).

■ We answer the first question quickly.

We hold Minnesota has the most significant—indeed, perhaps the only—relationship with plaintiff and the issue of her right to maintain an action for loss of consortium. We reach this conclusion because only Minnesota is concerned with the marital status of plaintiff and the interspousal rights and duties arising therefrom.

Iowa has no state interest to protect. No party is an Iowa resident. Iowa's legitimate concern to protect its citizens who may have rendered services to one involved in an accident here is not a factor, since a claim for loss of consortium would not give rise to such services. See Kopp v. Rechtzigel, 1966, 273 Minn. 441, 141 N.

W.2d 526, 527, Tooker v. Lopez, 124 N.Y. 2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394, 402, and concurring opinion in Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380, 383.

Nor may it be said our policy recognizing a wife's claim for loss of consortium was intended primarily to do more than extend such right to Iowa wives.

Iowa's sole worry, in fact, is for the enforcement of its law of the road and the safety of its highways. The consortium claim does not touch that issue.

There is considerable authority that matters which depend upon the marital relationship for their solution should be decided by the law of the husband-wife domicile. See Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727; Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544; Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254; Haumschild v. Continental Casualty Company, 7 Wis.2d 130, 138, 95 N. W.2d 814, 818; Thompson v. Thompson, 105 N.H. 86, 89, 193 A.2d 439.

None of these cases deals with consortium claims but the same rationale was used to allow a recovery for such loss in California (which does not permit consortium claims by either husband or wife) when the court applied Colorado law because that was the place of marital domicile. Oregon, too, has employed the rule in a consortium case, although denying recovery under the particular facts of the case because the place of marital domicile was held not the state of most significant relationship. See Schneider v. Schimmels, 1967, 256 Cal.App.2d 366, 64 Cal.Rptr. 273; Casey v. Manson Construction and Engineering Company, 1967, 247 Or. 274, 428 P.2d 898.

Other courts have faithfully adhered to the lex loci rule in considering loss of consortium cases. Jordan v. States Marine Corporation of Delaware, 9 Cir., 1958, 257 F.2d 232 (which is discussed in Cardamon v. Iowa Lutheran Hospital, 256 Iowa 506, 517, 128 N.W.2d 226, 233); McVickers v.

Chesapeake and Ohio Railway Company, Eastern District of Michigan, 1961, 194 F. Supp. 848; Owen v. Illinois Baking Corporation, Western District of Michigan, 1966, 260 F.Supp. 820; Sestito v. Knop, 7 Cir., 1961, 297 F.2d 33; Harford Mutual Insurance Company v. Bruchey, 1968, 248 Md. 669, 238 A.2d 115; Conway v. Ogier, (1961), 115 Ohio App. 251, 184 N.E.2d 681, 685.

Although we have never faced this precise problem ourselves, what we said in Flogel v. Flogel, supra, (page 551 of 257 Iowa, 133 N.W.2d 907) and in Fuerste v. Bemis, supra, (page 833 of 156 N.W.2d) indicate general accord with the principles set out in the opinions holding the law of the marital domicile ordinarily prevails.

In all of these cases, it is true, the courts applied either the law of the forum or the law of the place where the tort occurred, but we see no reason for a different rule when the marital domicile is neither of these but is, as here, a third state whose interests are superior to those of the other jurisdictions involved.

■ Our task is made more difficult by the fact Minnesota has now abandoned its rule against recovery by a wife for loss of consortium. In Thill v. Modern Erecting Company, 284 Minn. 508, 170 N.W.2d 865, 870, the Minnesota court adopted a rule substantially similar to ours but made its application prospective to accidents occurring after September 19, 1969. The mishap in the case now before us was in 1966.

If we apply Minnesota law as it was prior to Thill v. Modern Erecting Co., we give life to a policy which that state has now repudiated. Even though Minnesota has made the new rule prospective, we are not bound to do likewise. We should decide, rather, whether that action would further some valid interest of that state under the particular circumstances of this case.

In our opinion it would not. The prospective application was apparently to per-

mit those relying on the old rule to protect themselves against enlarged liability by securing additional insurance coverage. (See Spanel v. Mounds View School District, 264 Minn. 279, 118 N.W.2d 795 and Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66, both referred to in the Thill opinion.) But that element is not present here. Defendant, a resident of Illinois, cannot claim either surprise or injustice at the application of a rule which his own state has recognized since the 1960 case of Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 893. Presumably he protected himself against such liability. Incidentally, although we have confined our discussion to the law of Minnesota and Iowa because the case was presented to the trial court and argued here on that basis, Illinois also has a possible state interest in the outcome as the place of defendant's residence and the place where his truck is presumably garaged, licensed, and insured.

By enforcing the now discarded Minnesota rule, we would ignore our own state policy without advancing Minnesota's. Certainly Minnesota's purpose was not to protect non-resident motorists who had not relied upon the old rule at the expense of its own citizens. In fact we are not at all sure that Minnesota would apply Thill prospectively for the benefit of an Illinois defendant to whom it was neither unforeseen nor unjust.

In Fuerste v. Bemis, supra, 156 N.W.2d at page 834, we said, "The basic premise of the most significant relationships theory is that the court of the forum should apply the *policy* of the state with the most interest in the litigants and the outcome of the litigation." (Emphasis added.)

If we employ the Minnesota pre-Thill rule, we brush aside the "basic premise" of the most significant relationship doctrine since the policy of that rule has now been repudiated. We are convinced the doctrine of Thill v. Modern Erecting Co., supra, should prevail.

Under this holding the ruling of the trial court, while erroneously finding Iowa law applicable, was without prejudice since the result is the same one we have reached.

We have not overlooked the fact that Thill makes the wife's right to recover for loss of consortium conditional. (170 N.W.2d at page 869.) We believe the conditions set down have been substantially met here.

There is one other factor we should not ignore, although we do not base our decision thereon and although it was not urged at trial nor argued here. In recent years the discrimination which allowed a husband to recover for loss of his wife's consortium (an almost universal rule) but denied such right to a wife when her husband was injured (as most states did until the 1950 case of Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L. R.2d 1366, cert. denied, 340 U.S. 852, 71 S. Ct. 80, 95 L.Ed. 624) has been subjected to constitutional attack as violating the 14th Amendment guarantee of equal protection. See Karczewski v. Baltimore & Ohio Railway Company, Northern District of Illinois, 1967, 274 F.Supp. 169, 179; and Leffler v. Wiley, 1968, 15 Ohio App.2d 67, 239 N.E.2d 235, 236; and Owen v. Illinois Baking Corp., W.D.Michigan, 1966, 260 F. Supp. 820, 821.

A rule arising out of the marriage relationship but which extends or withholds rights solely on the basis of whether the wife or husband seeks to enforce them is —today—suspect of violating the equal protection clause.

For the reasons set out herein we hold there was no reversible error in the trial court's ruling allowing proof of claim for loss of consortium.

III. In his remaining assignments of error defendant asserts there was: (1) irreconcilable inconsistency between the general verdict and the answer to a special interrogatory submitted to the jury, requir-

ing that the general verdict be set aside; (2) error in submitting the issue of sudden emergency; (3) error in the trial court's refusal to submit a requested interrogatory; and (4) error in the trial court's refusal to grant a new trial because of plaintiffs' failure to establish either negligence or proximate cause.

Plaintiffs' petition alleged two grounds of negligence: (1) failure to yield one-half of the traveled right-of-way in violation of section 321.298, The Code, 1966, and (2) failure to keep and maintain a proper lookout.

The accident was a virtual head-on collision. The pivotal question—and one upon which there was a great difference of opinion—was which driver was over the center line in the fateful moments leading up to the impact.

At defendant's request, the following interrogatory was submitted to the jury under rule 206, Rules of Civil Procedure:

"Are you able to determine * * * the side * * * of the center of the paved portion of the highway where the two motor trucks collided?"

The jury answered this interrogatory in the negative. Defendant argues the negative finding on this issue makes it impossible for the jury to have found liability against the defendant. Therefore, defendant tells us, there is an irreconcilable conflict between the general verdict and the answer to the special interrogatory, in which case the special finding must prevail.

■ It is true that irreconcilable conflict between a general verdict and a special finding must be resolved in favor of the special finding, and that in such circumstances the general verdict cannot stand. However, all reasonable presumptions are in favor of the general verdict. Fischer v. Hawkeye Stages, 240 Iowa 1203, 1205, 37 N.W.2d 284, 286; Presthus v. Western Mutual Insurance Company, 257 Iowa 1035, 1037, 135 N.W.2d 549, 550.

■ Assuming that the negative response to the special interrogatory precludes a finding for plaintiffs on the first allegation of negligence—violation of section 321.298—does it necessarily follow they could not still decide defendant failed to keep a proper lookout?

Since we must indulge every presumption in favor of the general verdict, we examine the evidence in its view most favorable to plaintiffs to see if it will sustain a finding of liability on the sole ground defendant failed to keep a proper lookout. As the two trucks approached each other, defendant's vehicle came over the center line and angled toward the Berghammer vehicle. Plaintiff driver pulled to his right as far as he could safely do so, assuming defendant would return to his side of the road. When the two vehicles were only a few feet apart, plaintiff driver pulled hard to his left, hoping thereby to give defendant enough room on his left to clear. Subsequent events, of course, proved him to be wrong. However, this last-minute attempt by plaintiff driver would explain the jury's inability to determine which side of the center line the impact occurred, and would also be consistent with a finding that defendant was not keeping a proper lookout.

■ Turning in front of an oncoming car is evidence of failure to keep a proper lookout. Law v. Hemmingsen, 249 Iowa 820, 829, 830, 89 N.W.2d 386, 393; Hamdorf v. Corrie, 251 Iowa 896, 911, 101 N.W.2d 836, 845; Mathews v. Beyer, 254 Iowa 52, 58, 116 N.W.2d 477, 480; and Goettelman v. Stoen, Iowa, 182 N.W.2d 415, filed December 15, 1970.

In Law v. Hemmingsen we quote the following from Hackman v. Beckwith, 245 Iowa 791, 802, 803, 64 N.W.2d 275, 282, "Motorists do not ordinarily drive on the left in the face of a near approaching vehicle if they see it coming; and if they do not, the question of lookout may become a material one, proper for the jury's consideration."

■ That language is particularly applicable here. We believe a jury question was made out on the question of lookout. It follows there was no irreconcilable conflict between the general and special verdicts.

■ IV. What we have said in the previous division perhaps presages what our conclusion is with reference to defendant's claim that there was no evidence to justify submitting the issue of sudden emergency to the jury.

The objection to the instruction was as follows:

" * * * defendant objects and excepts to instruction 21 which submits the issue of sudden emergency to the jury, for the reason that under the evidence in this case there is no issue of sudden emergency involved. * * * "

The instruction is not challenged as an incorrect statement of the law, only because the issue should not have been submitted at all. We limit our consideration accordingly.

Defendant's argument seems to be that plaintiff driver was obliged to take *effective* evasive action immediately upon seeing the oncoming truck over the center line. Failing to do so, he continues, plaintiff cannot say the resulting emergency was not of his own making. See Mass v. Mesic, 256 Iowa 252, 255, 127 N.W.2d 99, 101; Baker v. Wolfe, 1969, Iowa, 164 N.W.2d 835, 839; Bangs v. Keifer, 1970, Iowa, 174 N.W.2d 372, 374. We cannot agree with defendant nor can we say *as a matter of law* plaintiff's reaction must have been both immediate and successful or all is lost.

The evidence shows only 300 feet separated the two when defendant first crossed the center line. The interval from that moment until they collided can only be measured in seconds—and few of them.

Plaintiff driver *did* act promptly. He turned first to his right; then determined the left offered the best chance of escape. He pulled hard to his left, and the collision followed almost instantly.

Perhaps the decisions made under the urgency of the moment do not, in retrospect, satisfy critical examination. But, confronted as he was with the approaching vehicle bearing down upon him, plaintiff driver is not held to the same standard of sound judgment as if no such situation existed. As the trial court properly told the jury, he is then bound only to act "as a careful and prudent person would act when suddenly placed in a similar position."

Whether plaintiff driver met this norm was a proper question for jury determination under the record before us. Mathews v. Beyer, 254 Iowa 52, 56, 57, 116 N.W.2d 477, 480; Pinckney v. Watkinson, 254 Iowa 144, 151, 116 N.W.2d 258, 262; Gibbs v. Wilmeth, 261 Iowa 1015, 1020, 157 N.W.2d 93, 97–98; Yost v. Miner, (Iowa), 163 N.W.2d 557, 563; Bangs v. Keifer, supra, 174 N.W.2d at 374.

■ V. Neither do we find any merit in defendant's claim that plaintiff failed as a matter of law to prove either negligence or proximate cause. What we have already said serves to demonstrate there was sufficient evidence of both these elements for jury submission.

■ VI. The last assignment deals with the trial court's failure to submit this requested interrogatory:

"Do you find from the evidence that there was sufficient room on the shoulder on the east side of the highway for such distance south of and east of the place where the collision occurred in this case to have permitted the plaintiff, John F. Berghammer, to have driven his truck off the pavement and onto the shoulder?"

The court refused to submit this interrogatory. We find no error in such refusal. Interrogatories should not deal with specific terms of evidence. They should be directed toward some ultimate fact

which is essential to the jury's determination of the case. The interrogatory above set out does not pose such a question. It merely asks for a determination of one evidentiary fact, which could at best partially substantiate or refute plaintiffs' overall testimony. It could not determine any ultimate fact decisive to the verdict in this case. Ipsen v. Ruess, 241 Iowa 730, 737, 738, 41 N.W.2d 658, 664; Dezsi v. Mutual Benefit Health and Accident Association, 255 Iowa 1027, 1037, 125 N.W.2d 219, 225; Barnard v. Cedar Rapids City Cab Company, 257 Iowa 734, 748, 133 N.W.2d 884, 894; and Livingston v. Morarend, 260 Iowa 530, 539, 149 N.W.2d 850, 855.

As pointed out in Ipsen v. Ruess, supra, the trial court has wide discretion in deciding what interrogatories should be submitted to the jury. We believe the decision here was the correct one.

We have reviewed all the errors assigned by defendant and find no reversible error. The judgments are therefore affirmed.

Affirmed.

LARSON, STUART, MASON, and BECKER, JJ., concur.

UHLENHOPP, J., MOORE, C. J., and RAWLINGS, J., concur except as to Division II and the judgment for Lillian J. Berghammer, to which they dissent.

REES, J., takes no part.

UHLENHOPP, Justice (concurring in part, dissenting in part).

What law applies to Lillian J. Berghammer's claim for loss of consortium?

The parties do not raise constitutional issues but are in disagreement as to the law which is applicable to that claim. Minnesota law appears to apply under the "most significant relationships" test. Fuerste v. Bemis, 156 N.W.2d 831 (Iowa). But *what* Minnesota law—the law which the Minnesota courts hold to be applicable or the law which we may differently hold to apply?

Involved here is a problem of the applicable law in two dimensions. Conventional conflict of laws principles deal with different laws geographically. That question is not difficult here; as seen, Minnesota law applies. We may therefore put that question aside.

But the present case also involves different laws temporally. Between the time of the collision and the trial, the Minnesota law on consortium was changed by judicial decision. Thill v. Modern Erecting Co., 284 Minn. 508, 170 N.W.2d 865.

Three legal issues must be considered. What law, temporally, is usually applicable to a claim? With respect to this claim, what is the applicable law according to the Minnesota courts? What is the applicable law according to us?

I. *Different Laws Temporally.* When only one state is involved but different laws exist in point of time, the substantive law as of the time of an occurrence is applied to that occurrence, rather than the law as of the time of the trial. 1 Beale, Conflict of Laws, 1 n. 1, 2 (1935) ("Some proper law must have governed the juridical situation at the time of its occurrence"). Applying the law as of the time of trial would mean that the results in litigation, even within one state, would differ according to the time trial was held. "Choice of the law * * * at the time of trial * * * is contrary to stability and fundamental justice." Stimson, Conflict of Laws, 3 (1963). Thus in a Minnesota trial concerning a Minnesota collision involving Minnesota people, the Minnesota courts apply the Minnesota substantive law as of the time of the collision, just as in an Iowa trial concerning an Iowa collision involving Iowa people, the Iowa courts apply Iowa substantive law as of the time of the collision. Schultz v. Gosselink, 260 Iowa 115, 148 N.W.2d 434.

II. *Law "As of Occurrence" According to Minnesota Courts.* The difficulty is

that the law in force as of the time of a collision does not necessarily remain the law which is applicable to that time. Although the law as of the time of the occurrence governs claims arising from that occurrence, the legislature can at a later time retroactively change that law. Then the law applicable to the occurrence is the new law. 50 Am.Jur. Statutes §§ 478 at 494, 479 at 501, 482 at 505; 82 C.J.S. Statutes §§ 415 at 990, 421 at 996.

Judicial decisions have traditionally operated retroactively (as well as prospectively). Thus a decisional change in the law relating to consortium, such as in Thill, would normally be retrospective, so that recovery could be had for loss of consortium in trials after Thill based on occurrences before Thill. The subsequent decision "relates back" to prior occurrences. Formerly this result was based on the thought that judges merely "discover" common law rules. When a prior rule is changed by decision, "the subsequent judges do not pretend to make new law, but to vindicate the old one from misrepresentation. They do not decide that the former decision was bad law, but that it was not law." Blackstone, Commentaries, 41–42 (Gavitt Ed.1941).

Blackstone's theory is no longer recognized, and today courts sometimes restrict the application of a decision to future occurrences. Great Northern Ry. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. As stated in Annotation, Overruling Decision—Application, 10 A.L.R.3d 1371, 1377–1378:

> Under the classical view that the courts merely discovered and announced existing law, which they had no hand in creating, no issue of restricting the rule of an overruling case to prospective operation could be presented, since the act of overruling was a confession that the earlier rule had been erroneous and should never have been applied at all; but the modern decisions, taking a more pragmatic view of the judicial function,

have recognized the power of a court to hold that an overruling decision is operative prospectively only and is not even operative upon the rights of the parties to the overruling case. As a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited.

This court has recognized that judicial decisions may be limited to prospective operation. State v. Wisniewski, 171 N.W.2d 882 (Iowa).

What did the Minnesota Supreme Court do here? In Thill, it recognized a wife's claim for loss of consortium and overruled its prior decisions, but it restricted the new rule to future occurrences. Consequently according to the Minnesota Court, the law in force at the time of a prior claim, such as we have here, remains the same as when the collision took place. Mrs. Berghammer's claim for consortium, if asserted in the Minnesota courts, would fail.

III. *Law "As of Occurrence" According to Iowa.* We apply Minnesota law in this case. Do we apply the Minnesota law on the nonretrospectivity of Thill?

The law of a state as to the applicability of its own laws temporally would appear to be part of the substantive law of that state. Thus if the Minnesota legislature enacted a statute creating or abolishing liability for loss of consortium, and expressly provided the act is prospective only, could the courts of another state applying Minnesota law disregard that express provision of the statute? So with judicial decisions can a claimant cite Thill in support of her consortium claim and disregard Thill's restricted application as to time?

The law of a state as to prospectivity or retrospectivity of its laws is not a part of the conflict of laws rules of that state. We ordinarily understand conflict of laws rules to relate to the applicability of laws geographically. Restatement, Conflict of Laws, § 1, Comment *c*; 1 Beale, Conflict of Laws, 1 (1935); Ehrenzweig, Conflict of Laws, 309 (1962). When we apply the

law of another state, we do not apply its conflict of laws rules, but we do apply its other relevant substantive law. Restatement, Conflict of Laws, § 7(b); 1 Beale, Conflict of Laws, 55 (1935); Leflar, American Conflicts Law, 11 (1968). Such other relevant substantive law would seem to include its law on prospectivity and retrospectivity.

Any other conclusion would mean additional uncertainty in the already uncertain conflict of laws principles, and "certainty, predictability, and uniformity of result" are important objectives in the conflict of laws field as in other branches of law. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267, 279. If we should say, we will apply Minnesota law to an incident but not the law the Minnesota courts apply, we would not be applying Minnesota law; we would be applying some law of our own. If the Minnesota legislature provides or the Minnesota courts hold that a statute or decision operates prospectively only but we apply it retrospectively, saying we are applying Minnesota law, then Minnesota must have two laws—the Minnesota law in Minnesota and the Minnesota law in Iowa. A litigant in Minnesota would get one result; another litigant suing in Iowa because of some fortuitous circumstance, such as acquisition of jurisdiction of the defendant here, would get another result—although Minnesota law is supposedly applied in both cases. Such is the situation which Stimson describes as "contrary to stability and fundamental justice." Stimson, Conflict of Laws, 3 (1963).

Decisions which involve the problem indicate that laws of another state applied prospectively there are so applied by the state of the forum. Spriggs v. Dredge, 74 Ohio Law Abst. 264, 140 N.E.2d 45 (Ohio App.) (Ohio applying Alabama law denying death claims as of time of the death, not Alabama law allowing such claims as of time of the trial); Livermore v. Planet Corp., 12 App.Div.2d 25, 208 N.Y.S.2d 1 (New York applying Michigan law recog-

nizing common law marriages as of time of the marriage, not Michigan law outlawing such marriage as of time of the trial); Clews v. Stiles, 181 F.Supp. 172 (D.N.M.) (federal court applying New Mexico Law denying jurisdiction over nonresidents as of time of the incident, not New Mexico law assuming such jurisdiction as of time of the trial).

Iowa courts applying Minnesota substantive law should apply the Minnesota law pertaining to the applicability of Minnesota laws as to time. The present claim for loss of consortium would be dismissed in Minnesota and should be dismissed here.

The motion to dismiss appeal should be overruled and the judgments for plaintiffs should be affirmed, except the judgment for plaintiff Lillian J. Berghammer, which should be reversed.

MOORE, C. J., and RAWLINGS, J., join in this special concurrence and dissent.