Virgil S. **GOETTELMAN** and Robert A. Goettelman, Administrators of the Estate of Mabel Goettelman, Deceased, Appellees,

v.

David STOEN, Appellant.

Virgil S. **GOETTELMAN** and Robert A. Goettelman, Executors of the Estate of Charles Goettelman, Appellees,

v.

David STOEN, Appellant.

Nos. 54144, 54145.

Supreme Court of Iowa.

Dec. 15, 1970.

Christoffersen & Damsgaard, Cedar Falls, for appellant.

Miller, Pearson & Gloe, Decorah, for appellees.

UHLENHOPP, Justice.

These consolidated appeals involve several questions which arose in the trials of two death actions growing out of an automobile collision. The two actions were tried separately.

Charles Goettelman, born in 1890, was a farmer and self-employed individual during his lifetime. His wife, Mabel, born in 1891, was a housewife. They were married in 1912, and reared four children, all of whom are now adults. Mr. Goettelman acquired a farm of about 31 acres from his father in 1937, and he and Mrs. Goettelman lived there until their deaths in 1968. The farm is on the west side of Locust Road near Decorah, Iowa, and contains 24 acres of tillable land.

At the time of the automobile collision, the Goettelmans owned their property in joint tenancy. Their assets consisted of the farm, appraised at $17,500, savings bonds of $3,159.84 which they acquired in 1958, a checking account containing $318.-10, a 1951 Chevrolet car worth $150, and a tractor, cultivator, and plow. The Goettelmans received social security. They do not appear to have accumulated any savings after 1958.

Mr. and Mrs. Goettelman enjoyed reasonably good health for their ages. Mr. Goettelman made toys out of wood, some of which he sold, and he also sold berries from his garden. He rented out the land on a 50-50 basis, receiving $300 to $400 annually. He assisted with the planting, for which he received crops or cash. He helped a neighbor pick corn and was paid for the work. He put in fence. He occasionally helped a son in a locker business, for which he received groceries and meat. Mrs. Goettelman's services were those of the typical homemaker.

Defendant David Stoen, a young married man, lived in a trailer at the time in question.

The collision occurred on September 6, 1968. After the instant litigation was commenced, plaintiffs took defendant's deposition, which disclosed that defendant was having domestic trouble over his drinking and staying out. The deposition ranged back over the period of several days prior to the collision and dealt with defendant's drinking and his activities with a 19-year-old girl. Here is a sample:

"Q. Now, I want to talk to you more in detail now about these three or four days in September, just before the Goettelman accident happened. Was there a time in there when you were not staying home in the trailer? A. Yes.

"Q. Would you tell us about that, when that was, and what the situation was? A. We had difficulties in the family, and I was running around, running around, drinking. I didn't used to come home.

"Q. Now, for instance, on the 1st, 2nd, 3rd and 4th of September—the night of the 4th would be the night before the accident—were you living at home in your trailer any of those nights? A. The 1st. I would say I was, but wouldn't say—.

"Q. How about the night before the accident, were you living at home that night? A. No, I wasn't.

"Q. And do you think the night before that, the second night before, were you home that night? A. No.

"Q. All right, now, during the 3rd and 4th of September of '68, were you drinking liquor then during those days? A. Not liquor, beer.

"Q. Beer. Well, just tell us about your drinking during those days. A. It wasn't heavy, but I was drinking those two days, ya."

Plaintiffs learned in the deposition that defendant drank beer heavily and became intoxicated on September 2nd, he drank beer but not heavily on September 3rd and 4th, and on September 5th he drank two bottles of beer during the day at his parents' farm and one bottle about 4:30 P.M. with his wife and friends. Plaintiffs also brought this out in the deposition:

"Q. Now, where did you sleep during the night of September 4th, or did you sleep? A. Ya, I slept. The apartment down here on Maple Street.

"Q. And whose apartment? A. A girl's apartment.

"Q. And was there anyone else there besides this girl? A. She had some of her friends come up.

"Q. And was there part of the night that you and the girl were alone? A. I guess towards morning, ya. * * *

"Q. And what time did you go up to this girl's apartment? A. About 8 o'clock, I'd say.

"Q. And you stayed there until when? A. The next morning."

The deposition contained additional questions and answers of the type quoted.

Regarding the collision itself, Locust Road runs north and south past the Goettelman place. The road is upward to the south, with the crest of the hill 907 feet south of Goettelmans' driveway. Evidently the Goettelmans had been to Decorah and were returning north on Locust Road, with Mr. Goettelman driving. They stopped at their mailbox, which is 12 feet east of the traveled portion of the road and opposite their driveway, and then turned left across the road to a point at which their front wheels were either at the west edge of the road or on their driveway. The traveled portion of the road is 23 feet wide.

Defendant came down the hill in a northerly direction on the left side of Locust Road. The time was about 5:55 p. m. Some neighbors were able to see both cars from considerable distance; visibility was evidently satisfactory. Defendant did not change his course or speed during the material time prior to the collision and drove directly into the left side of the Goettelman car, throwing both of the Goettelmans onto the road, rendering the Goettelman car a total loss, and pushing it sideward about 57 feet. The front of defendant's car was smashed back. Defendant's tires left no marks prior to impact, but left skid marks afterward for about 61 feet. The cars came to rest mostly north and a little west of the place of collision.

The Goettelmans were taken to the hospital. Mr. Goettelman suffered much pain. He was given drugs. He died at 8:20 p. m. Mrs. Goettelman was rendered unconscious in the collision, never regained consciousness, and died at 7:20 o'clock the next morning.

Plaintiffs were subsequently appointed fiduciaries of the two estates and commenced the present wrongful death actions, which were tried separately. Both petitions were in two divisions, the first division for actual damages and the second for exemplary damages based on intoxication. The second division was not submitted to the jury in either case, but plaintiffs prevailed in both actions on their first divisions. In the action for Mr. Goettelman's death, the jury allowed $12,047.02 as damages: $547.02 for specials, $7,000 for pain and suffering, and $4,500 for the present value of the estate Mr. Goettelman would have accumulated had he lived out his normal life. As damages in the other action,

the jury allowed $18,424.16: $424.16 for specials and $18,000 for the present value of the estate Mrs. Goettelman would have accumulated. The trial court ordered a new trial in Mrs. Goettelman's case unless plaintiffs would accept $10,424.16, and plaintiffs filed a remittitur accordingly. Defendant appeals from both judgments.

*Charles Goettelman Death Action.* Defendant raises three principal points in the Charles Goettelman death action: no substantial evidence was adduced in support of the charges of negligence against defendant, Mr. Goettelman was contributorily negligent as a matter of law, and the damages are excessive.

■ I. The charges of negligence against defendant were failing to keep a proper lookout, failing to have control, operating at excessive speed, and driving at a speed greater than would permit defendant to stop within the assured clear distance ahead. The problems are largely factual on this branch of the appeal.

The specification of failure to keep a proper lookout is unquestionably in the case. "Proper lookout means more than merely to look and see an object. It implies being watchful of the movements of the driver's vehicle in relation to other things seen and which could be discerned or seen in the exercise of ordinary care. It involves care, watchfulness and attention of the ordinarily prudent person under the circumstances." Bradt v. Grell Construction, 161 N.W.2d 336, 341 (Iowa). When defendant came over the crest from the south, he had a view ahead for 907 feet to the Goettelman lane, and beyond. The Goettelmans were there. No one suggests that any obstruction to the view existed. Mr. and Mrs. Goettelman proceeded across the road from east to west in plain view. Defendant came down the highway on the left side. During the latter part of his course he did not change his direction or his speed. Evidently he did not see what was there to be seen, or at least the

jury could so find. Lookout was for the jury.

"Control" means more than being able to stop a car reasonably quickly under the circumstances. "It also connotes an ability with reasonable promptness to maneuver 'so as to guide and direct its course or movement in the manner willed by the operator, acting as an ordinarily careful and prudent driver would do under similar circumstances.'" Tillotson v. Schwarck, 259 Iowa 161, 169, 143 N.W.2d 284, 288–289. Only one aspect of control need be considered here, though others are present. For a considerable distance prior to the place of collision, defendant did not change his course from the west side of the roadway to the east side being vacated by the Goettelmans. The jury could find lack of control.

The other main charge against defendant was speed—speed which was unreasonable under the circumstances and speed which prevented defendant from stopping within the assured clear distance. The minimum requirements on speed are statutory: "Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard for the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law." Code, 1966, § 321.285.

■ Clearly there was high speed in this collision. Proof of speed does not require an estimate of miles per hour or even an eyewitness, although one eyewitness testified defendant was going very fast. The circumstances and the physical facts —the actual consequences of speed—may speak louder than words. "We have held many times that speed may be proven by

circumstantial evidence, and such evidence may be sufficient to overcome direct evidence as to speed." Walker v. Sedrel, 260 Iowa 625, 632, 149 N.W.2d 874, 878. "Although the evidence may be entirely circumstantial as to the rate of speed at which an automobile was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with the accident may be sufficient to overcome direct evidence as to the rate of speed of a motor vehicle." 10 Blashfield, Automobile Law & Practice, § 6560 at 596–97 (Perm. Ed.1955).

The speed in this collision was defendant's speed. No one testifies Mr. Goettelman suddenly shot across the road. It was defendant who ran into the Goettelmans, not vice versa. The force of the collision killed two people. It smashed back the front of defendant's car and rendered the Goettelman car a total loss. Goettelmans' car was pushed sideward, for nearly 60 feet, leaving marks. Defendant's car left marks for about the same distance. The jury could reasonably find that under the circumstances existing at the time, defendant's speed was not "careful and prudent" and that defendant was unable to stop "within the assured clear distance ahead."

Defendant's contention regarding the charges of negligence cannot be sustained.

■ II. Defendant says next that Mr. Goettelman was contributorily negligent as a matter of law. Formerly, plaintiffs would have had the burden of establishing Mr. Goettelman's freedom from contributory negligence. The rule was changed by § 619.17, Code, 1966. Under present law, defendant has the burden of establishing that Mr. Goettelman was negligent and that such negligence was a proximate cause of his death.

Seldom does the party having the burden of proof sustain that burden as a matter of law. Sherwood v. Nissen, 179 N.W.2d 336 (Iowa). Moreover, contributory negli-

gence is ordinarily for the jury. Adams v. Deur, 173 N.W.2d 100 (Iowa). In this case Mr. Goettelman's conduct must be considered in the light of defendant's conduct. Mr. Goettelman had the right to assume that others using the highway would exercise due care and comply with the law —that others would travel at careful and prudent speed and make reasonable use of their powers of observation and maintain control. Pazen v. Des Moines Transp. Co., 223 Iowa 23, 272 N.W. 126. Mr. Goettelman was not obliged to anticipate that a driver at considerable distance would come down on him at high speed without keeping a proper lookout or control, as the jury might well find defendant did. Cf. Jacobson v. Aldrich, 246 Iowa 1160, 68 N.W.2d 733. The jury could find that Mr. Goettelman almost made it across the road, defendant was traveling at high speed, defendant must have been a considerable distance away when Mr. Goettelman started across to his driveway, and Mr. Goettelman could reasonably assume he could get safely across and defendant would pass behind him.

This contention of defendant cannot be upheld.

■ III. Finally on the Charles Goettelman case, defendant contends the jury allowed too much damages. The objection goes to the allowance for the present value of the estate Mr. Goettelman would have accumulated. Somewhat similar fact situations existed in Oldsen v. Jarvis, 159 N.W.2d 431 (Iowa), and DeMoss v. Walker, 242 Iowa 911, 48 N.W.2d 811. This court stated in Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 813–814:

"In considering the size of verdicts we have repeatedly referred to passion and prejudice, shock the conscience, failure to administer substantial justice, the rule of fair compensation, and lack of support in the evidence. * * * It seems fundamental the most important of these is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they may

all arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. Certainly where the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question."

Mr. and Mrs. Goettelman jointly owned a little farm and a few bonds. They had an old car and a small sum in their checking account. Mr. Goettelman had three farm implements. They lived on a very small amount of rent and earnings, plus social security. It is the picture of an elderly couple living at a subsistence level. The jury allowed $4,500 as the present value of the amount Mr. Goettelman would have accumulated had he lived.

This court permitted the plaintiff a total of $10,000 in a situation having similarities in Oldsen v. Jarvis, 159 N.W.2d 431 (Iowa). Defendant does not challenge the allowance of $7,000 here for Mr. Goettelman's pain and suffering. But defendant argues that Mr. Goettelman's small income and lack of savings since 1958 demonstrate conclusively little or nothing more would have been accumulated. Yet, would all reasonable minds say that Mr. Goettelman would have accumulated no more had he lived? Cf. Brophy v. Iowa-Illinois Gas & Electric Co., 254 Iowa 895, 119 N.W.2d 865. The jury, probably realizing the accumulation of a substantial amount was unlikely, allowed a comparatively modest sum—modest for these high times. Evidently the jury, in allowing no more than it did, was aware of the evidence and the law. We are unwilling to interfere with the jury's finding.

We do not uphold defendant's third contention, and the judgment against him in the Charles Goettelman case must stand.

*Mabel Goettelman Death Action.* In the other death action, defendant makes two main contentions: the damages are excessive and the trial court should have permitted defendant to interrogate the jurors about damages at the hearing on the motion for new trial.

IV. As to the first contention, the special damages are not in contention. Pain and suffering and loss of services and support were not submitted. The controversy is over the amount awarded for loss of accumulations.

The Goettelmans' financial circumstances have been related. They jointly owned a little farm, had a small checking account, held bonds of about $3,160, and received social security. Mrs. Goettelman, 76 years old, was a housekeeper and did not work outside the home. With Mr. Goettelman, she sold some berries in season. No savings were shown since 1958, when the bonds were acquired.

On trial of the Mabel Goettelman action, plaintiffs introduced over continuous objections by defendant, which were overruled, the portions of the discovery deposition which have been quoted and additional portions. In connection with their claim for exemplary damages, plaintiffs were entitled to prove, if they could, that defendant was intoxicated at the time of the collision. Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841. Apart from that and although defendant may not have been intoxicated, plaintiffs were entitled to show defendant's condition with reference to intoxicants at the time of the collision as bearing upon his exercise of due care. Smith v. Pine, 234 Iowa 256, 12 N.W.2d 236; Yost v. Miner, 163 N.W.2d 557 (Iowa).

In establishing defendant's condition at the time of the collision, plaintiffs were not restricted in time to that precise moment, and some of their evidence was proper. But their proof had to relate to defendant's condition at that moment, and much of their evidence went afield and was irrelevant. Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Pierce v. Heusinkveld, 234 Iowa 1348, 14 N.W.2d 275; 61 C.J.S.Motor Vehicles § 516(4) at 483.

Moreover, this was inflammatory evidence, and it had the very effect upon the jurors that might be expected: they allowed $18,000 as the present value of the amount this elderly housewife would have accumulated from her efforts had she lived. Contrast the allowance of $4,500 for the corresponding item in the Charles Goettelman case, where the inflammatory evidence was not offered. The trial court reduced the total award in the Mabel Goettelman case to $10,424.16, of which $424.16 was for the special damages.

This is not a case in which a party unwittingly stumbled into irrelevant answers because he did not know what the witness on the stand would say. Plaintiffs had the deposition in hand and knew exactly what testimony was in it.

When a verdict like this one comes before us, we examine the record carefully in an effort to ascertain what brought it about. Jettre v. Healy, 245 Iowa 294, 302, 60 N.W.2d 541, 546 ("carefully searched the record"). The rule is, "If the verdicts are the result of passion and prejudice a new trial should be granted, but if they are merely excessive because not supported by sufficient evidence even in the absence of passion and prejudice justice may be effectuated by ordering a remittitur of the excess as a condition for avoiding a new trial." Schmitt v. Jenkins Truck Lines, 170 N.W.2d 632, 659 (Iowa); see also Castner v. Wright, 256 Iowa 638, 127 N.W.2d 583, 128 N.W.2d 885. Examination of the evidence here leaves us with no doubt. This verdict was the result of inflammatory evidence which prejudiced the jury. We do not have a valid verdict, and neither the trial court nor we can find the proper damages. To do so would be to render a verdict, and that is the function of another jury. The case will have to be retried.

V. Defendant's other contention, that he should have been permitted to examine the jury about damages post-verdict, need not be considered. The problem is not likely to arise on retrial.

Affirmed in 54145; reversed in 54144.

All Justices concur except BECKER, J., who concurs in result.