# IN THE COURT OF APPEALS OF IOWA

No. 18-1453
Filed November 27, 2019

**BRENDA J. ALCALA,**
    Plaintiff-Appellee,

**vs.**

**MARRIOTT INTERNATIONAL, INC. and COURTYARD MANAGEMENT CORPORATION d/b/a QUAD CITIES COURTYARD MANAGEMENT CORPORATION,**
    Defendants-Appellants.
_____


        Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,

Judge.


        The defendant hotel in a slip-and-fall case appeals the jury verdict.

**AFFIRMED.**


        Mark McCormick of Belin McCormick, P.C., Des Moines, and Danny Lane

Worker of Lewis Brisbois, Chicago, Illinois, pro hac vice, for appellants.

        Michael K. Bush and John C. Bush of Bush, Motto, Creen, Koury, Halligan,

Davenport, for appellee.


        Heard by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

> Brenda Alcala is not the person she was, and she never will be. She was an active and successful wife, mother, grandmother and employee, a go-getter on the job and a rock for the family. She didn't sit on the couch. She was engaged with life and with her family and relished physical activity. Now, she has a painful disability that prevents her from doing the most common of physical activities, has precluded her from traveling as she loved to do, and makes every activity a challenge. As a result of this injury Ms. Alcala spends many evenings on the couch, elevating her foot, dealing with the pain, and wishing she could be who she was and do what she did before the injury. She has lost so much of what brought enjoyment to her life.

Alcala's diminished condition after a slip and fall outside a Bettendorf hotel, as described in her appellate brief, persuaded a jury to award her substantial compensatory damages. The defendant, Marriott International, Inc., appeals the verdict. Marriott contends the damages were excessive and resulted from the jury's passion and prejudice against the corporation. Marriott also seeks a new trial based on expert witness testimony allowed by the district court.

For the reasons explained below, we affirm.

## I. Facts and Prior Proceedings

In the winter of 2010, then fifty-year-old Alcala traveled from Texas to the Quad Cities for business. Alcala worked as a software consultant for Genesis Health Systems. While in Iowa, she stayed at the Bettendorf Courtyard by Marriott. Around 7:30 a.m., on January 21, Alcala walked out Marriott's front door. In front of the hotel, she slipped on the icy sidewalk and fell to the ground. Another hotel guest saw her lying on her back and called for help.

The night before, Bettendorf experienced a wintery mix of freezing rain and snow. The Marriott did not employ a twenty-four-hour maintenance worker. So housekeeper Margaret DePaepe was responsible for removing snow and salting

the sidewalks overnight. DePaepe testified she did so diligently until her shift ended at 6:00 a.m. on January 21. Two hours later, the maintenance worker's shift began. The parties dispute what happened between 6:00 a.m. and 8:00 a.m. The hotel manager testified the front desk person was responsible between those times. But that person testified she did not salt the sidewalks.

Marriott kept logs of snow and ice removal for the relevant times. But those records showed inconsistencies. For instance, some timestamps were not in chronological order. And DePaepe testified some checks entered during her shift were not in her handwriting.

Testimony about the condition of the sidewalk varied. Several hotel guests testified the sidewalk was slippery. One guest testified the sidewalk and parking lot were so slippery he chose to walk on the grass instead. No guest could recall seeing salt on the sidewalk. Paramedics testified the sidewalk was slick when they arrived. Responders from the fire department put down salt themselves so they could attend to Alcala.

In contrast, Marriott workers recalled the sidewalk being well-salted. One hotel worker testified she brought Alcala a blanket without concern for the sidewalk being slippery. Front desk attendant Tammy Hornbuckle testified she saw Alcala hurry through the lobby and out the front door, carrying a twelve-pack of water bottles. After Alcala fell, Hornbuckle looked out the front door and saw salt pellets on the sidewalk. Hornbuckle called 911 but did not go outside.

On the icy ground outside, Alcala felt "immediate pain." She saw her right foot was "dangling backwards" from its normal position. Alcala later learned she

fractured her ankle in three places. She required several surgeries to repair the damage.

Before trial, Alcala retained Russell J. Kendzior, an expert in slip, trip, and fall prevention.[1] Kendzior reviewed statements by other witnesses in the case. At trial, the plaintiff offered his conclusion that Marriott did not adequately attend to the icy sidewalk that January morning. In Kendzior's opinion, the hotel's inattention caused Alcala's fall.

The jurors agreed with Kendzior. They awarded Alcala damages totaling $4,916,439.[2] The verdict included $3.5 million in damages for pain and suffering and loss of function of the body. Marriott unsuccessfully moved for new trial. Marriott appeals.[3]

## II. Analysis

Marriott raises two claims on appeal.[4] First, it contends the jury verdict was excessive because Alcala pursued a theory of the case and offered evidence to inflame the jury's passion and prejudice against the hotel chain. Second, Marriott

---

[1] The district court found Kendzior could testify as an expert, and Marriott does not challenge that finding on appeal.

[2] The jury awarded $44,466 for past medical expenses; $252,025 for future partial care needs; and $159,734 for past lost wages. The jury also awarded $960,244 for loss of future earning capacity; $583,000 for past pain and suffering; $1,167,000 for future pain and suffering; $583,000 for past loss of function of the body; and $1,167,000 for future loss of function of the body.

[3] This case is not new to our appellate courts. The parties first tried the case in February 2014. Marriott appealed. Our court determined the hotel was entitled to a new trial because the district court did not instruct the jury on the continuing storm doctrine and other issues. *See Alcala v. Marriott Int'l, Inc.*, No. 14-1058, 2015 WL 5577844 (Iowa Ct. App. Sep. 23, 2015). On further review, the supreme court vacated our decision, but also ordered a new trial based on instructional error. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). This appeal is from the second trial held in March 2018.

[4] Alcala contends Marriott did not state in its brief how it preserved error, and we should consider that omission as a waiver of those claims. *See* Iowa R. App. P. 6.903(2)(g)(1). We choose to overlook that omission and address the issues preserved on appeal.

appeals a spate of rulings on its objections to testimony from Kendzior, Alcala's slip-and-fall expert. We will review each claim for an abuse of discretion. *See Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718–19 (Iowa 2014); *see also Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017).

### A. Excessive Verdict

#### 1. Iowa R. Civ. P. 1.1004(4)

Marriott moved for a new trial under Iowa Rule of Civil Procedure 1.1004(4), contending the jury's $4.9 million verdict was a product of passion or prejudice. The district court rejected Marriott's arguments.

On appeal, Marriott quotes passages from Alcala's opening statement and closing argument focusing on the defendant's "corporate nature" and the jurors' ability to "enforce safety rules" through the civil jury trial. Marriott also chronicles comments from Kendzior's testimony that it considers inflammatory. Marriott complains the plaintiff's overall approach appealed to the jurors' "reptilian" instinct to protect themselves and their community from harm. *See, e.g.*, Louis J. Sirico, Jr., *The Trial Lawyer and the Reptilian Brain: A Critique*, 65 Clev. State. L. Rev. 411 (2009) ("[T]he most primitive part of the human brain traces its evolutionary beginning to reptiles . . . . An effective appeal to the reptile brain . . . is an appeal to protect ourselves, our family, and our community."). Alcala disputes this characterization of her counsel's trial strategy and Kendzior's testimony.

*Error preservation.* To begin, Alcala argues Marriott did not preserve error on its challenges to counsel's comments. She notes the defense did not object during opening statements or closing arguments and did not raise those claims in its motion for new trial.

Parties need not make contemporaneous objections to closing argument to preserve error for appeal. *See Kinseth v. Weil-McLain*, 913 N.W.2d 55, 67 (Iowa 2018) (finding "a party does not necessarily waive an objection to a remark made in a closing argument if the party fails to make a contemporaneous objection" because counsel need not "jeopardize his position with the jury by constant objections" (citing *Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970))). But counsel must move for a mistrial before the court submits the case to the jury so the court has "ample opportunity to 'admonish counsel or instruct the jury' before deliberations begin." *Id.* at 68 (quoting *Andrews*, 178 N.W.2d at 401).

Marriott did not move for mistrial. And Marriott's motion for new trial did not refer to counsel's comments. In fact, Marriott's motion stated, "It is unnecessary in this case to look any further than the testimony of . . . Kendzior for evidence that fostered passion and prejudice in the jury."

Marriott now claims it preserved error by generally asserting the verdict resulted from passion or prejudice. But the district court did not address any ground of error related to opening statements or closing arguments. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). So we likewise limit our review of Marriott's excessive-verdict challenge to its targeted complaints about Kendior's testimony.

*Merits.* "The determination of damages is traditionally a jury function" and only for the most compelling reasons will we disturb the verdict. *Estate of Pearson v. Interstate Power and Light Co.*, 700 N.W.2d 333, 345 (Iowa 2005). A party may

receive a new trial if the jury awards excessive damages "appearing to have been influenced by passion or prejudice." *See* Iowa R. Civ. P. 1.1004(4). If a verdict results from passion or prejudice, a new trial should be granted, but if it is "merely excessive because not supported by sufficient evidence[,] even in the absence of passion or prejudice[,] justice may be effectuated by ordering a remittitur of the excess as a condition for avoiding a new trial." *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 659 (Iowa 1969).

"[A] flagrantly excessive verdict raises a presumption that it is the product of passion or prejudice." *WSH Props., L.L.C., v. Daniels*, 761 N.W.2d 45, 50 (Iowa 2008). Thus, "we will first consider whether the verdict is so excessive as to raise a presumption that it was motivated by passion or prejudice on the part of the jury." *Id.* We focus on the evidentiary support for the verdict to determine whether it was flagrantly excessive. *See Pearson*, 700 N.W.2d at 345. We take the evidence in the light most favorable to Alcala. *See WSH Properties*, 761 N.W.2d at 50. We accord weight to the view of the trial judge who heard and saw all the witnesses and observed the jury. *Pearson*, 700 N.W.2d at 345.

In addressing Marriott's motion for new trial, the district court found the verdict was not flagrantly excessive. The court determined the jurors "had a reasonable basis for their award of damages, and the amount awarded was not so far outside the range of evidence as to suggest the jury was motivated by passion or prejudice." The court focused on the unrebutted testimony of Alcala's doctors.

On appeal, Marriott challenges four categories of the damage award: (1) past pain and suffering, (2) future pain and suffering, (3) past lost function of the body, and (4) future lost function of the body. During trial, Alcala estimated

those damages at $3.5 million, and the jury awarded her the full amount. Because the jurors gave Alcala what she asked for, according to Marriott, they showed an "arbitrariness" that raised a presumption of passion or prejudice.

Alcala counters that the jury did not give her exactly what she suggested. In closing argument, Alcala asked for $500,000 for past damages and $3 million for future damages. The jury gave her more than she requested for past damages and less for future damages. This independent exercise of judgment, according to Alcala, shows the jury was not consumed by passion or prejudice.

With those arguments in mind, our job is to decide whether the district court abused its discretion in rejecting Marriott's passion-and-prejudice argument. We start with the recognition that damages for pain and suffering cannot be measured with mathematical precision. *Pearson*, 700 N.W.2d at 347. Courts properly leave that calculation to the sound judgment of the jury. *Id.* Those damages encompass both physical pain and mental anguish, anxiety, embarrassment, and loss of enjoyment of life. *Id.* Pain-and-suffering damages are by their nature "highly subjective." *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 772 (Iowa 2009). Covering different ground, damages for loss of function of the body are "broadly inclusive of various physical injuries." *See Brant v. Bockholt*, 532 N.W.2d 801, 804 (Iowa 1995).

We next consider whether the evidence supported the jury's award for those four damage categories. The jury heard Alcala was an active person before the fall. She travelled extensively for work and found her work rewarding. She had a healthy salary, earning $147,000 per year despite having only a high school diploma. She planned to work to full retirement age to build up her savings. She

enjoyed gardening, walking, shopping, and attending her grandchildren's activities. Her husband's poor health and early retirement left her as the sole breadwinner of the family.

The jury also heard from Alcala's two doctors, Charles Cassel and Michael Tran. Dr. Cassel, who treated Alcala right after the fall, testified Alcala suffered a trimalleolar dislocated ankle fracture. That injury caused bleeding, swelling, and pain in the immediate aftermath. Alcala described her pain as "twenty out of ten." To that end, Alcala screamed when medical providers had to pull her bones back into position. Alcala is allergic to morphine, and the drugs administered did little to block the pain.

After that initial treatment, surgeons inserted a plate and screws into Alcala's ankle to hold her joint together. She has had several additional surgeries. While she first needed a wheelchair to get around, she progressed to using a cane. She has a permanent limp and has trouble navigating stairs. She also reports daily pain and swelling. Her balance is off and her abnormal gait puts additional strain on her knee and lower back, which also hurt more. In the future, she may need additional surgeries.[5]

Alcala has taken a different job for the same company at lower pay because it does not require as much travel. She believes she cannot keep working to full

---

[5] Marriott counters that the testimony of Dr. Tran, Alcala's doctor in her home state of Texas, does not support the size of the verdict. Dr. Tran testified Dr. Cassel had done a good job setting the bones in her ankle. The fall happened in January and, by April, Alcala was back at work. She reported to Dr. Tran that her ongoing pain was mild to moderate. He advised her to take anti-inflammatory medicines to reduce swelling and manage pain but acknowledged the condition was deteriorating slowly and more surgeries were possible.

retirement age as she originally planned because "[e]very day is just very difficult." She moves slower and cannot meet the physical demands of her job.

Alcala's husband testified her personality has changed since the fall. She has less energy and cannot do things she used to enjoy. And although her family is close and supportive, Alcala worries about being unable to provide more for her children and grandchildren. She also worries she cannot participate in or attend her grandchildren's activities because of her physical limitations.

Viewed in the light most favorable to Alcala, the record includes ample evidentiary support for the verdicts. Alcala's physical and mental pain and suffering are essentially undisputed. She suffers daily pain. Her active lifestyle has contracted. She does not have the same employment or financial prospects. She worries for her future and her family's future. She cannot enjoy the activities she did before the fall. We find no abuse of discretion in the district court's conclusion the verdict was not flagrantly excessive.

That evidentiary basis for the damage awards "dispels any presumption" that passion or prejudice motivated the jury. *WSH Props.*, 761 N.W.2d at 51. "Once the presumption of passion . . . is dispelled, we must look for some other indication in the proceedings that would support a finding the jury was angry with the defendants and motivated to punish them." *Id.*

On cue, Marriott points to comments in Kendzior's testimony that it believes motivated the jury to punish the hotel chain. Marriott suggests the plaintiff's expert became an advocate for Alcala. As an example of his offending statements, Marriott complains the district court allowed Kendzior to quote statistics about the

prevalence of accidental falls that result in emergency room visits.[6]  Marriott also criticizes Kendzior's inaccurate comments about Marriott's policy statement about snow and ice removal.  Kendzior referenced a document outlining Marriott's snow removal policy and stressed "they underline the words 'remove it at once' to stress, emphasize, how important it is."[7]

In addition, on appeal Marriott bemoans Kendzior's use of the word "gross" in describing Marriott's violation of its policies.  Marriott also contests his response to a hypothetical defendant asserting the plaintiff in a slip-and-fall action was wearing inappropriate footwear and his response to a hypothetical defendant asserting the remedial measures to avoid a slip-and-fall injury are too burdensome.  The district court made no findings about the inflammatory nature of these statements, and Marriott did not seek amended or enlarged findings.  So those claims are not properly before us.  *See Meier*, 641 N.W.2d at 537.

We have reviewed the expert's testimony, Marriott's motion for new trial, and the court's order.  We do not find an abuse of discretion in the court's refusal to grant the motion for new trial based on an excessive verdict resulting from passion or prejudice.

---

[6] The district court found those statements relevant to the reasonableness of preventing a known hazard.  We find no abuse of discretion in that ruling.

[7] As it turned out, Alcala's counsel had underlined the passage that instructs employees to "remove [snow and ice] at once."  In opening statements, Alcala's counsel clarified, "Now, I want to be clear that I'm the one who underlined that and I'm the one that is emphasizing that."  At another point during trial, Alcala's counsel objected to witnesses being shown the exhibit because of their own underlining.  The district court found those clarifications on the record were enough to correct any inaccurate perception before jury deliberations and dispelled any unfair prejudice.  We find no abuse of discretion in the court's conclusion.

As a final push for its excessive verdict argument, Marriott points to *Goettelman v. Stoen*, 182 N.W.2d 415, 421 (Iowa 1970). In that case, the defendant's negligence caused the deaths of a married couple in car accident. *Goettelman*, 182 N.W.2d at 417. The estates brought two separate wrongful death actions. *Id.* The parties tried the cases separately. In the case brought by the wife's estate, the jury awarded almost $6000 more in damages than the jury in the case brought by the husband's estate. *Id.* The more generous jury heard evidence the defendant "was having domestic trouble over his drinking and staying out . . . and his activities with a 19-year-old-girl." *Id.* at 416. The supreme court was left "with no doubt" that the difference in the verdicts "was the result of inflammatory evidence which prejudiced the jury." *Id.* at 421.

Marriott tries to draw a parallel to *Goettelman* by comparing the verdicts in the first and second trials of Alcala's lawsuit. In the first trial, the jury awarded damages totaling $1.2 million. *Alcala*, 880 N.W.2d at 707. In the second trial, the jury's verdict reached nearly $5 million. Marriott insists the difference can be traced to the inflammatory statements from Alcala's expert witness allowed in the second trial. So in its view, the second verdict is clearly excessive.

Countering Marriott's position, Alcala attributes the higher verdict to several factors. In the second trial, (1) Alcala impeached hotel employee DePaepe by securing her concession the maintenance records were not in her handwriting; (2) Marriott did not offer its own experts to counter the testimony of her doctors; and (3) Alcala presented evidence her medical condition had worsened while waiting for the prior appeals. We agree with Alcala. The disparate awards in her two trials are not analogous to the verdicts discussed in *Goettelman*.

### 2.    Iowa Rule of Civil Procedure 1.1004(6)

In passing, Marriott mentions the verdicts were "not based upon credible evidence" and "lacked evidentiary support."  Alcala reads these as references to the ground for new trial under Iowa Rule of Civil Procedure 1.1004(6).  This rule provides the court may grant a new trial if "the verdict . . . is not sustained by sufficient evidence."  Alcala argues Marriott did not preserve error on such a claim because it only cited rule 1.1004(4) as a ground for relief.  Iowa R. Civ. P. 1.1004(4) (the court may grant new trial if there are "[e]xcessive or inadequate damages appearing to have been influenced by passion or prejudice")

We do not read Marriott's appellate brief as raising an issue under rule 1.1004(6).  Instead, we view Marriott's argument as encouraging this court to find a presumption of passion or prejudice arising from an excessive damage award.  We addressed that argument above.

### B.  Expert Testimony

Marriott next contends the trial court abused its discretion by overruling defense objections to several questions Alcala's counsel asked Kendzior in his video deposition.  According to Marriott, the questions strayed outside the boundaries of permissible expert testimony and the district court abused its discretion by admitting the exchanges into the record.

Iowa Rule of Evidence 5.702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

In its pretrial motion in limine, Marriott asserted Kendzior's proffered testimony would not satisfy that rule. Marriott also complained Kendzior's testimony would "present the Plaintiff's case from the witness stand telling the jury which witnesses are to be believed, why they are to be believed, what evidence is persuasive, which opinions are important and what the community standards are that should be applied by the jury to find the Defendant liable."

On appeal, Marriott insists the district court erred in allowing Kendzior to testify to questions not requiring expert knowledge and allowing Alcala to question Kendzior on "questions of fact for the jury." According to Marriott, "Kendzior usurped the prerogative of the jury in expressing views about the credibility of controverted evidence."

*Error preservation.* As a starting point,[8] Alcala emphasizes Marriott successfully moved in limine to exclude any statements Kendzior made bolstering the credibility of a witness. The court ordered Alcala to redact the video to exclude Kendzior's comments on the credibility of other witnesses. The court overruled every other objection Marriott made to Kendozior's testimony. At trial, the court offered Marriott the opportunity to address any additional redactions. Marriott made no objections relevant here. Alcala characterizes Marriott's failure to ask for further redactions as waiver of its claims that Kendzior offered improper opinions on witness credibility. We agree and will not address those issues.

---

[8] Alcala argues Marriott failed to provide citations to the record showing where it preserved each objection for appellate review. Alcala says we should consider that omission as a waiver and decline to review any of these issues. Again, we will address them, where we can, based on the district court rulings.

Alcala also asserts Marriott failed to preserve error on two of the ten questions because Marriott raises different grounds on appeal than it raised at trial.[9] We have scrutinized the record and conclude Marriott did not contemporaneously raise the same objections advanced on appeal. So we will not address Marriott's challenges to those two questions. *See Bratton v. Bond*, 408 N.W.2d 39, 44 (Iowa 1987) (refusing to consider application of two hearsay exceptions when two different exceptions were raised at trial).

*Merits*. The preserved objections to Kendzior's testimony fall into three categories. We will address each kind of objection in turn.

*1. Questions not calling for scientific, technical, or specialized knowledge*.

Marriott contends several questions posed to Kendzior were impermissible because they did not call for the expert to share scientific, technical, or otherwise specialized knowledge. "Iowa is generally 'committed to a liberal view on the admissibly of expert testimony.'" *State v. Tyler*, 867 N.W.2d 136, 153 (Iowa 2015) (quoting *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010)). Rule 5.702 allows expert testimony if it will help the jury understand the evidence or to determine a contested fact.

Rule 5.703 further provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

---

[9] Those two questions involved the response by Marriott staff to the "mist that was present in the early morning hours of January 21st 2010."

The district court found Kendzior qualified as a walkway safety expert, and Marriott does not challenge that finding here. The disputed questions go to the reasonableness of Marriott's actions, the weather and other conditions on the morning of her fall, and how those conditions affected the hotel sidewalk. Those facts are central to Alcala's suit against Marriott. His testimony would help a jury understand the circumstances leading to Alcala's injury. The district court did not abuse its discretion in overruling this objection to questions plaintiff's counsel posed to Kendzior.

*2. Questions about controverted questions of fact for the jury*

Marriott next contends several questions were impermissible because they called for Kendzior to opine on controverted jury issues.[10] It is true a witness cannot opine on a legal conclusion or whether the facts of the case satisfy a certain legal standard. *In re Palmer*, 691 N.W.2d 413, 419 (Iowa 2005), *overruled on other grounds by Alcala*, 880 N.W.2d 699, 708 n.3. But "[a]n opinion is not objectionable just because it embraces an ultimate issue." Iowa R. Evid. 5.704. "[A] qualified witness may opine on the ultimate question." *Schlichte v. Franklin Troy Truck*, 265 N.W.2d 725, 730 (Iowa 1978). And expert witnesses may base their opinions on facts or data gleaned before or at the trial. *See* Iowa R. Evid. 5.703.

After reviewing the questions at issue, we find no abuse of discretion in allowing the expert to address facts that were in dispute at trial. "[S]uch a challenge

---

[10] Marriott also complains Kendzior improperly expressed a legal conclusion by referring to a "gross" violation. Kendzior testified, "[S]o . . . the two plus hour window whereby that hazardous condition, the ice, was allowed to form . . . was a gross violation of Marriott's safety procedures and policies." Marriott moved to strike, but the court overruled the objection in its limine order. Whether Marriott was "grossly" negligent was not an issue in the case. So the district court did not abuse its discretion.

goes to the credibility of the expert testimony, rather than its admissibility." *Acosta v. Acosta*, 725 F.3d 868, 874 (8th Cir. 2013). Marriott was free to examine the factual basis for Kendzior's opinion in cross-examination. *See id.*

### 3. Speculation and outside scope of expertise

Finally, Marriott contends two of the questions called for speculation or were outside the scope of Kendzior's expertise. "An expert may not express a mere guess or conjecture, but [he] may testify to what might have been the cause of a certain result." *Millis v. Hute*, 587 N.W.2d 625, 629 (Iowa Ct. App. 1998). An expert must have enough data to reach a competent opinion. *City of Oelwein v. Bd of Trs. of the Mun. Fire and Police Ret. Sy. of Iowa*, 567 N.W.2d 237, 239 (Iowa Ct. App. 1997).

Alcala asked Kendzior to give his opinion about the general behavior of people walking in winter conditions and whether Alcala was reasonable in how she walked, based on her description of the event. Kendzior had data to address those questions. He reviewed witness depositions, Alcala's own report of her actions, and weather reports. He also relied on his own expertise in walkway safety and pedestrian awareness of hazards. His opinion was sufficiently grounded in fact to be more than conjecture.

But we do question whether the expert's view on the care necessary for walking in winter conditions truly helped this Iowa jury determine a fact in issue. *See* Iowa R. Evid. 5.702 (hinging admissibility of expert testimony on its helpfulness to the trier of fact). An expert's testimony is not helpful unless "[t]he body of knowledge which the expert brings" is "outside the realm of" the jurors' own "common knowledge and experience." *State v. Hines*, 223 N.W.2d 190, 192–

93 (Iowa 1974); *see State v. Fox*, 480 N.W.2d 897, 899 (Iowa Ct. App. 1991) (noting expert testimony must "bear[] on matters outside the realm of common knowledge and experience"). So opinions about matters "within the jury's knowledge or experience" are "subject to exclusion 'because [they do] not then meet the helpfulness criterion.'" *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010). Put another way, courts should not "permit 'expert' testimony on issues the jury is equally as capable of resolving." *Hines*, 223 N.W.2d at 192–93. Such opinions do not assist the jury. *Lee*, 616 F.3d at 809. They just tell the jury "what result to reach." *Id.*

As noted above, the court permitted Kendzior to testify Alcala was reasonable in the way she walked on the sidewalk. We doubt this topic would escape the common knowledge and experience of an Iowa juror. We also doubt that all of the expert's testimony—such as his observations Alcala "wasn't running," "wasn't careless," "was patient," and "took her time"—came from specialized knowledge "unavailable to the jury." *Id.* at 808 (concluding district court correctly excluded testimony where expert "did not employ any technique or utilize any specialized skill that is unavailable to the jury" (citation omitted)). We thus find a small portion of Kendzior's testimony was improperly admitted. But viewing the record as a whole, we do not find Marriott's substantial rights were affected by those limited admissions. *See* Iowa R. Evid. 5.103(a); *Even v. Bohle*, No. 01-0061, 2002 WL 31640613, at *6 (Iowa App. Nov. 25, 2002) (concluding record showed lack of prejudice because disputed evidence appeared "relatively insignificant" in the context of lengthy trial).

For all the reasons above, we affirm the jury verdict.

**AFFIRMED.**